IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BENJI D. REED,

                              Plaintiff,              Civil Action No.
                                                      9:11-CV-0250 (TJM/DEP)

        v.


JOHN DOE No. 1; JOHN DOE No. 2; and
M. SOTO,

                              Defendants.

_____

APPEARANCES:                                OF COUNSEL:

FOR PLAINTIFF:

BENJI D. REED, *Pro Se*
04-B-3302
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

FOR DEFENDANT SOTO:

HON. ERIC T. SCHNEIDERMAN          JAMES SEAMAN, ESQ.
Attorney General of the State      Assistant Attorney General
of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

*Pro se* plaintiff Benji D. Reed, a New York prison inmate, has commenced this suit pursuant to 42 U.S.C. § 1983 against various prison officials alleging deprivation of his civil rights. As a result of prior court determinations, plaintiff's claims against M. Soto, the only defendant named and served in the action, have all been dismissed, although plaintiff was granted leave to amend his complaint in order to allege facts demonstrating the existence of a plausible retaliation claim against that defendant.

Currently pending before the court for review is an amended complaint proffered by plaintiff in an attempt to cure the deficiencies discerned by the court in connection with his retaliation claim, as originally stated. Having reviewed that proposed amended complaint, I conclude that, like its predecessor, the new pleading fails to include sufficient factual allegations to support a cognizable retaliation claim, and therefore recommend that it be rejected. In addition, because I find that the negligence claim asserted against one of the unidentified defendants, defendant John Doe #2, is precluded by New York Correction Law § 24, I recommend that claim be dismissed. Finally, because I conclude that

plaintiff's amended complaint sets forth facts plausibly alleging an Eighth Amendment claim against the other unidentified defendant, defendant John Doe #1, who, to date, has not been identified and therefore cannot be served, I recommend that the superintendent of Eastern Correctional Facility be added to the action for the sole purpose of aiding plaintiff in ascertaining the identity of that defendant.

I.      BACKGROUND

Plaintiff commenced this action on March 8, 2011, asserting a variety of claims against two unnamed defendants John Doe #1 and John Doe #2, and defendant M. Soto, a corrections counselor at Eastern Correctional Facility ("Eastern"), where plaintiff was housed at the relevant times.[1] On October 17, 2011, defendant M. Soto, the sole remaining named-defendant in the action, moved for dismissal of the balance of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 11. In a report issued on July 26, 2012, I recommended dismissal of plaintiff's claims against defendant Soto, with

---

[1]      Plaintiff's complaint also named seven corrections employees assigned to Southport Correctional Facility ("Southport") as defendants. All claims stemming from events occurring at Southport were severed from those arising out of Eastern, however, and were transferred to the Western District of New York by order issued by Senior District Judge Thomas J. McAvoy on August 2, 2011. *See* Dkt. No. 4.

leave to amend with respect to plaintiff's cause of action for retaliation arising out of the alleged filing of false misbehavior reports by defendant Soto. *See* Report and Recommendation Dated July 26, 2012 (Dkt. No. 22). That recommendation was based upon a finding that plaintiff's complaint failed to allege facts sufficient to establish the requisite nexus between his visit to the prison infirmary, which plaintiff alleged constituted protected activity, and defendant Soto's issuance of misbehavior reports against him, representing an alleged adverse action motivated by retaliatory animus. *Id.* at pp. 15-16.

My recommendation was adopted by Senior District Judge McAvoy on September 26, 2012, with leave to the plaintiff to replead within thirty days. Dkt. No. 28. Plaintiff has since availed himself of the opportunity to amend, submitting a proposed amended complaint on October 12, 2012. Dkt. No. 30. That amended complaint has been referred to me for review.

II.   DISCUSSION

A.   Unlawful Retaliation

It is well-established that the issuance, by correctional officers, of a false misbehavior report to against an inmate, standing alone, is insufficient to support a cognizable claim under the Eighth Amendment or

otherwise.  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A]

prison inmate has no general constitutional right to be free from being

falsely accused in a misbehavior report") (citing *Freeman v. Rideout,* 808

F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982, 108 S. Ct. 1273

(1988)).  In such a case, "[t]he prisoner's due process rights are protected

if he is granted a hearing on the charges and given an opportunity to rebut

them."  *Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) (citations

omitted).

When an allegedly false misbehavior report is issued, motivated by

an inmate's exercise of a protected right under the Constitution, however,

a cognizable retaliation claim lies under 42 U.S.C. § 1983.  *See Franco v.*

*Kelly,* 854 F.2d 584, 590 (2d Cir. 2008) ("An act in retaliation for the

exercise of a constitutional right is actionable under section 1983 even if

the act, when taken for different reasons, would have been proper.")

(alterations and internal quotation marks omitted).  In order to state a

*prima facie* claim of retaliation under section 1983, a plaintiff must

advance non-conclusory allegations establishing that (1) the he engaged

in protected conduct; (2) the defendants took adverse action against him;

and (3) a causal connection exists between the protected activity and the

adverse action. *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007);

*Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other*

*grounds by Phelps v. Kapnolas*, 308 F.3d 180, 187 n.6 (2d Cir. 2002). In

other words, plaintiff must allege facts plausibly suggesting that the

protected conduct was a "substantial or motivating factor" in the prison

officials' decision to take action against the plaintiff.

In my earlier report, I interpreted plaintiff's complaint as alleging

unlawful retaliation, predicated upon his contention that two misbehavior

reports issued against him by defendant Soto in September 2010 were

motivated by the fact that Reed sought medical treatment for a stomach

illness. Assuming that plaintiff's resort to seeking medical treatment within

the correctional facility could be regarded as protected activity sufficient to

trigger the First Amendment's protection against retaliation, and that the

issuance of a false misbehavior report could represent constitutionally

significant adverse action, I nonetheless found that plaintiff's complaint

lacked sufficient factual allegations from which it could be reasonably

concluded that a nexus existed linking the protected activity and adverse

action alleged.[2] For reasons similar to those set forth in my original

---

[2] When examining whether such a nexus exists, courts generally look to several factors, including "temporal proximity, prior good discipline, finding of not guilty

report, I conclude that plaintiff's most recent amended complaint is similarly lacking in the necessary factual allegations to establish the missing link.

The facts alleged in plaintiff's amended complaint show that on September 16, 2010, he visited the medical clinic at Eastern to receive treatment for a food related illness. Amended Complaint. (Dkt. No. 30) at 3. Plaintiff alleges that on that same date, he was issued a misbehavior report by defendant Soto for missing assigned programming, accusing him of being out of place and lying concerning his whereabouts. *Id.* at 4. The misbehavior report was later dismissed when it was learned that he, in fact, had missed the programming for medical reasons. *Id.* at 5. As a result, it appears that the misbehavior report was issued not *because of* plaintiff's trip to the infirmary, but instead out of a mistaken belief that he was elsewhere than in the infirmary at the time of the scheduled programming. *See id.* ("However, after it was ascertained and found by the hearing officer that . . . I was infact [sic] at the medical clinic being treated for an illness . . . and thereafter confined to my cell . . .[,] the

---

at the disciplinary hearing, and statements by defendants as to their motives." *Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007) (Hurd, J.); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 339 (S.D.N.Y. 2000).

misbehavior report . . . was dismissed."). In simple terms, plaintiff's own allegations contradict his theory that defendant Soto issued a misbehavior report in retaliation for plaintiff seeking medical care. His complaint therefore lacks facts demonstrating the existence of a plausible retaliation claim, including, significantly, a causal link between the protected activity and first misbehavior report at issue.

Plaintiff's retaliation claim also potentially implicates a second misbehavior report that, according to plaintiff's amended complaint, was issued against him on September 25, 2010, again alleging his refusal to participate in prison programming. Amended Complaint. (Dkt. No. 30) at 6. The charges were ultimately dismissed after plaintiff explained the circumstances surrounding his refusal, which included an allegation by plaintiff that defendant Soto forced him to sign the refusal-to-participate form. *Id.* at 7. Once again, conspicuously lacking in plaintiff's complaint is any allegation linking a protected activity to the issuance of this second misbehavior report.

I note that in his amended complaint, plaintiff also alleges that defendant Soto directed various derogatory statements toward him, alleging "upon information and belief" that they were motivated by

favorable disciplinary decisions in connection with the two misbehavior reports previously issued by that defendant. Amended Complaint (Dkt. No. 30) at 8. It is well-established, however, that verbal harassment and derogatory comments by prison workers aimed at an inmate, however unprofessional, do not rise to a level of constitutional significance, and therefore cannot constitute adverse action sufficient to support a retaliation cause of action. *See Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996) ("[M]ere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.").[3] Section 1983 is not intended to represent a code of professional conduct for federal, state and local prison officials. *Cf. Alnutt*, 913 F. Supp. at 166, *accord*, *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (Peebles, M.J.); *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (Sotomayor, J.). Standing alone, allegations of verbal abuse do not rise to the level of a constitutional violation, and are not cognizable under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck*, No. 97-CV-0253, 2000 WL 949457, at *3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (finding that allegations that corrections officers laughed at and insulted

---

[3] Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

the plaintiff do not give rise to a claim under section 1983); *Carpio v. Walker*, No. Civ. 95-CV-1502, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) (Pooler, J., adopting report-recommendation by DiBianco, M.J. ) ("[V]erbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.").

In sum, careful review of plaintiff's proposed amended complaint reveals that it lacks sufficient factual allegations to demonstrate a plausible retaliation claim, including a basis to find a causal connection between a protected activity engaged in by plaintiff, and an adverse action taken by the defendants against him as a result. Plaintiff's claims against defendant Soto should therefore be dismissed, without leave to replead.

B.     John Doe Defendants

In the event that my recommendation is accepted and plaintiff's claims against defendant Soto are dismissed, the question remains as to whether he should be permitted to pursue his claims against the two unnamed, "John Doe," defendants.

1.    Merits of Claims Asserted Against John Doe
      Defendants

In order to decide whether the unnamed John Doe defendants

survive plaintiff's amended complaint, as a threshold matter, I must briefly

address the merits of the claims asserted against them.  As it relates to

defendant John Doe #1, plaintiff's amended complaint alleges that,

notwithstanding the fact that defendant John Doe #1 knew that the

"[M]exican corn and rice diablo," which was served to plaintiff and other

inmates as the evening meal on September 14, 2010, and which allegedly

caused plaintiff to become ill, smelled badly and "could be contaminated,"

defendant John Doe #1 nonetheless served it to plaintiff.  Amended

Complaint (Dkt. No. 30) at 4.  These allegations, liberally construed, could

support a plausible cruel-and-unusual-punishment claim in violation of the

Eighth Amendment.  *Id.* at 8.  Indeed, the Eighth Amendment protects

inmates against being served contaminated food in prison.  *See, e.g.,*

*Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) ("[T]he Eighth

Amendment prohibition against cruel and unusual punishment does

require that prisoners be served nutritionally adequate food that is

prepared and served under conditions which do not present an immediate

danger to the health and well being of the inmates who consume it.").  For

this reason, I recommend a finding that, although the identity of defendant John Doe #1 is unknown at this juncture, plaintiff's amended complaint alleges facts plausibly suggesting that defendant John Doe #1 violated plaintiff's Eighth Amendment right.

As it relates to defendant John Doe #2, plaintiff's amended complaint alleges that defendant John Doe #2, who is allegedly in charge of inspecting "all food products served" in Eastern, failed to identify the Mexican corn and rice diablo meal as contaminated. Amended Complaint (Dkt. No. 30) at 4. As a result of this allegation, liberally construed, plaintiff's amended complaint asserts a state-law negligence claim against that defendant. *Id.* at 9.

This claim fails, however, because New York Correction Law § 24 precludes civil actions from being filed against "any officer or employee of [the Department of Corrections and Community Supervision]. . . in his . . personal capacity, for damages arising out of any act done or failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee[,]" except for civil actions brought by the New York State Attorney General. N.Y. Corr. Law § 24(1). Here, although plaintiff has failed to specifically identify defendant John Doe #2,

plaintiff's amended complaint alleges that "Defendant, John Doe #2[,] is an employee employed at Eastern." Amended Complaint (Dkt. No. 30) at 2. Because defendant John Doe #2 is an employee of the Department of Corrections and Community Supervision ("DOCCS"), New York Correctional Law § 24 is triggered, precluding plaintiff from maintaining a negligence action against him. *Dallio v. Hebert*, 678 F. Supp. 2d 35, 57 (N.D.N.Y. 2009) (Suddaby, J., adopting report and recommendation by Lowe, J.) (dismissing the plaintiff's state-law claims of assault, battery, and negligence against a defendant correctional officer because "[a]lthough New York Correction Law section 24 explicitly bars only cases filed in state court, it is equally applicable to state law claims filed in federal court[.]"). For these reasons, I recommend that the negligence claim against defendant John Doe #2 be dismissed with prejudice.

2.      Identification of Defendant John Doe #1

Because I find that plaintiff's amended complaint states a claim against defendant John Doe #1, the question remains whether plaintiff may pursue his claims against that defendant because that defendant remains unidentified, despite the fact that this case has been pending

13

against him since March of 2011.[4]  Complaint (Dkt. No. 1).  More specifically, although Senior District Judge McAvoy's Decision and Order dated September 27, 2012, granted defendant Soto's motion to dismiss, the claim against defendants John Doe #1 survived because defendant Soto's motion moved to dismiss only the claims against him.  Dkt. Nos. 22, 28.  For this reason, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the court has the authority to *sua sponte* dismiss all claims against defendant John Doe #1 upon notice to plaintiff.  Fed. R. Civ. P. 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court–on motion or on its own after notice to the plaintiff–must dismiss the action without prejudice . . . or order that service be made within a specified time."); *see also* N.Y.N.D. L.R. § 4.1(b) (restricting Rule 4(m)'s time period to 60 days).  However, as discussed more fully below, despite the fact that the court is unaware of any efforts made by plaintiff to identify defendant John Doe #1, and mindful of the Second Circuit's instruction that the district courts are to assist *pro se* inmate litigants, I reject this option at this stage.

---

[4]     Although the following analysis is applicable to defendant John Doe #2, as well, in light of the fact that I recommend dismissal of the only claim pending against him due to New York Correction Law § 24, I do not address defendant John Doe #2 in this section of the report and recommendation.

14

Generally, when a *pro se* plaintiff includes a "Doe" defendant along with named defendants, the complaint is served upon the named defendants, and the plaintiff pursues discovery to identify the Doe defendant. *Peralta v. Doe*, No. 04-CV-6559-P, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005). In this case, however, in the event my recommendation to dismiss defendant Soto is adopted, no named-defendant will remain in this case. Mindful of plaintiff's status as a *pro se* inmate litigant, and of the court's obligation to assist *pro se* inmate litigants identify unknown defendants, I recommend that the superintendent of Eastern be added as a defendant in this action only so that service and joinder may occur. Once issue is joined, plaintiff may, through discovery, seek the identity of defendant John Doe #1. *See Peralta*, 2005 WL 357358, at * 2 (permitting the addition of the superintendent to facilitate service and discovery to uncover the identities of the unknown defendants) (citing *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (holding that the district court should assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants and "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant); *see also*

*Dorsey v. Fischer*, No. 9:09-CV-1011 (GLS/DEP), Decision and Order (N.D.N.Y. filed Jan. 23, 2012) *(sua sponte* adding the superintendent of the correctional facility where the alleged wrongdoing occurred in order to facilitate the identification of Doe defendants).[5]

Accordingly, I recommend that the clerk of the court be directed to add the superintendent of Eastern as a defendant for service and discovery purposes only. By doing so, I do not suggest in any way that the superintendent of Eastern was personally involved in the events allegedly giving rise to the Eighth Amendment claim asserted against defendant John Doe #1. In addition, because the court finds that the superintendent of Eastern is likely to be represented by the New York State Attorney General, I recommend that the clerk send a copy of the

_____

[5]     *Cf. Davis v. Kelly*, 160 F.3d 917, 921-22 (2d Cir. 1998) (holding that when a prisoner does not know the identities of any of the individuals who allegedly violated his constitutional rights, it is appropriate to maintain "supervisory personnel as defendants . . . until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability. . . . After an opportunity for discovery, undisputed allegations that the supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case, but such dismissal is premature where the opportunity to identify those involved has not yet been accorded"); *Murphy v. Goord*, 445 F. Supp. 2d 261 (W.D.N.Y. 2006) (denying superintendent's motion for judgment on the pleadings on personal involvement grounds and allowing plaintiff to proceed with discovery to identify the Doe defendants); *Brown v. Doe*, No. 96-CV-1222, 1999 WL 893070, at *2 (S.D.N.Y. October 18, 1999) (deferring defendants' motion to dismiss until they have provided the requisite discovery information and materials to the pro se prisoner litigant on the grounds that "[p]laintiffs, especially *pro se* incarcerated plaintiffs should be given an opportunity to identify . . . unknown defendants through discovery").

plaintiff's amended complaint, this report and recommendation, and any decision and order adopting or rejecting it, to the Attorney General's Office to facilitate the identification of defendant John Doe #1.

Plaintiff is advised, however, that the United States Marshals Service cannot effect service on a "John Doe" defendant. Therefore, if plaintiff wishes to pursue his claims against defendant John Doe #1, he must take reasonable steps to ascertain his identity. Upon learning the identity of defendant John Doe #1, plaintiff must seek permission from the court to file a second amended complaint to properly name him as a defendant. If plaintiff fails to ascertain the identity of defendant John Doe #1, so as to permit the timely service of process, this action will be dismissed as against that individual.

III.     SUMMARY AND RECOMMENDATION

Because plaintiff, though granted leave to amend, has failed to cure the deficiencies discussed in my earlier report and recommendation by alleging facts demonstrating the existence of a plausible retaliation claim against defendant Soto, I recommend that that claim be dismissed with prejudice. In addition, I recommend that plaintiff's negligence claim against defendant John Doe #2 be dismissed because New York

Correction Law § 24 precludes plaintiff from suing that defendant, a DOCCS employee, for any state-law claim. Finally, because I recommend a finding that plaintiff's amended complaint sets forth allegations plausibly suggesting a cause of action against defendant John Doe #1, I recommend that the superintendent of Eastern be added as a defendant to this action for the sole purpose of permitting service and discovery.

Based upon the foregoing it is hereby respectfully,

RECOMMENDED that plaintiff's amended complaint (Dkt. No. 30) be REJECTED as failing to cure the deficiencies detected in the court's earlier order as it relates to all claims asserted against defendant Soto, and that this action be DISMISSED, with prejudice, as it relates to defendant Soto; and it is further

RECOMMENDED that plaintiff's amended complaint be REJECTED as precluded by New York Correction Law § 24 as it relates to all claims asserted against defendant John Doe #2; and it is further

RECOMMENDED that plaintiff's amended complaint be ACCEPTED as it relates to the claims asserted against defendant John Doe #1; and it is further

RECOMMENDED that, upon the district judge accepting the

recommendations regarding the claims asserted against defendant John Doe #1, the superintendent of Eastern Correctional Facility be added as a defendant to this action for the sole purpose of permitting service and discovery;

RECOMMENDED that, upon the district judge accepting the recommendation that the superintendent of Eastern Correctional Facility be added as a defendant in this action, the clerk of the court issue a summons and forward it, along with a copy of plaintiff's amended complaint, to the United States Marshal for service upon the superintendent of Eastern Correctional Facility. The clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this report and recommendation, and any decision and order issued accepting or rejecting it; and it is further

RECOMMENDED that, upon the district judge accepting the recommendation that the superintendent of Eastern Correctional Facility be added as a defendant in this action, a response to the plaintiff's amended complaint be filed by a defendant, or his counsel, as provided for in the Federal Rules of Civil Procedure after service of process on a

defendant; and it is further,

RECOMMENDED that, upon the district judge accepting the recommendation that the superintendent of Eastern Correctional Facility be added as a defendant in this action, plaintiff continue to take reasonable steps to ascertain the identity of defendant John Doe #1, and, if appropriate, file a motion with the court seeking permission to file a second amended complaint so that he may add such individual, by name, as a defendant to this lawsuit; and it is further

RECOMMENDED that, upon the district judge accepting the recommendation that the superintendent of Eastern Correctional Facility be added as a defendant in this action, all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be

stricken from the docket.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions.  Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action.  All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     November 8, 2012
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge



Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
**(Cite as: 1997 WL 642543 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Robert del CARPIO, Plaintiff,

v.

Hans WALKER, Superintendent; Edward Dann,
Deputy Superintendent; Lt. Battle, Officer of the
Adjustment Committee; Officer York; Officer Ki-
mak, Auburn Corr. Facility, Defendants.

No. Civ.A.95CV1502RSPGJD.
Oct. 15, 1997.

Robert del Carpio, Federal Medical Center, Lexing-
ton, Kentucky, pro se.

Dennis C. Vacco, New York State Attorney Gener-
al, The Capitol, Albany, New York, for defendants,
Lisa Renee Harris, Assistant Attorney General, of
Counsel.

**ORDER**

POOLER, J.

*1 The above matter comes to me following a
Report–Recommendation by Magistrate Judge
Gustave J. Di Bianco, duly filed on the 18th day of
September, 1997. Following ten days from the ser-
vice thereof, the Clerk has sent me the entire file,
including any and all objections filed by the parties
herein.

After careful review of all of the papers herein,
including the Magistrate Judge's Re-
port–Recommendation, and no party having sub-
mitted objections FN1 thereto, it is

FN1. I note that the magistrate judge's re-
port recommendation was returned to the
court undelivered because the plaintiff is
no longer at the address listed in the court's
file, which is the last address plaintiff in-
structed the court to use. By Order filed
November 22, 1995, Magistrate Judge

Gustave Di Bianco ordered that plaintiff
"promptly notify the Clerk's Office of any
change in his address." Dkt. No. 3 at 4.
The same order provided that "failure to
keep such office apprised of [plaintiff's]
current address will result in the dismissal
of the instant action." *Id.* I do not rely on
plaintiff's failure to notify the court of his
current address as a basis for dismissing
the action; I merely note that plaintiff can-
not in the future claim, in reliance on his
failure to receive a copy of the report-
recommendation, that he was deprived of
the opportunity to file objections due to
any fault of the court.

ORDERED, that:

1. The Report–Recommendation is hereby ap-
proved.

2. The defendant's motion is granted and the
action dismissed for the reasons set forth in the Ma-
gistrate Judge's Report.

3. The Clerk serve a copy of this Order on the
parties by regular mail.

IT IS SO ORDERED.

GUSTAVE J. DI BIANCO, Magistrate J.
**REPORT–RECOMMENDATION**

This matter has been referred to the under-
signed for Report and Recommendation by the
Honorable Rosemary S. Pooler, United States Dis-
trict Judge pursuant to 28 U.S.C. § 636(b) and
LOCAL RULES N.D.N.Y. 72.3(c).

In the instant civil rights complaint, the
plaintiff alleges that while he was incarcerated, de-
fendants York and Battle harassed plaintiff and
filed false misbehavior reports against him in retali-
ation for the exercise of his right to redress griev-
ances and the right to practice his religion in viola-
tion of the First and Fourteenth Amendments of the

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
**(Cite as: 1997 WL 642543 (N.D.N.Y.))**

Constitution. Plaintiff also alleges Eighth Amendment violations as a result of defendants' actions.

The complaint seeks both injunctive and monetary relief.

Presently before the court is the defendants' motion for summary judgment pursuant to FED.R.CIV.P. 56. For the following reasons, the undersigned will recommend granting the defendants' motion and dismissing the complaint.

### DISCUSSION

**1. Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED.R.CIV.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

**2. Facts**

In his complaint, plaintiff alleges a chronology of events, commencing in May of 1995. Plaintiff states that he wrote letters to Superintendent Walker about defendants York and Kimak. Plaintiff alleges that these two defendants constantly harassed plaintiff. Plaintiff then alleges that after he complained of their actions to prison officials, defendants York and Kimak participated in filing false misbehavior reports against plaintiff in retaliation for his complaints. Plaintiff also alleges that defendant York forced plaintiff to continue working

when York knew that plaintiff's heart condition would not permit him to do as York asked. Plaintiff also claims that defendant York refused to feed the plaintiff. Plaintiff refers to three misbehavior reports that he alleges were fabricated.

**\*2** Plaintiff states that he has written to Superintendent Walker many times, but Walker has failed to remedy the situation. Plaintiff states that due to Walker's failure to remedy the problem, York and Kimak believe that they can continue to harass the plaintiff without adverse consequences. Plaintiff claims that Deputy Superintendent Dann failed to properly investigate plaintiff's allegations against York and Kimak. Plaintiff states that Lieutenant Battle was a hearing officer involved in the allegedly retaliatory misbehavior charges.[FN1] Plaintiff claims that defendant Battle did not properly evaluate or credit the plaintiff's testimony or the testimony of plaintiff's witnesses.

> FN1. The court notes that Lieutenant Battle was the hearing officer in only *one* of the plaintiff's disciplinary hearings. Lieutenant Perkins presided over the other two disciplinary hearings. Plaintiff did not sue Lieutenant Perkins.

**3. Respondeat Superior**

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a section 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondeat superior is inapplicable to section 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

In *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. A supervisory official is said to have been personally involved

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

if that official directly participated in the infraction. *Id.* A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.*

Defendants Walker and Dann argue that the plaintiff has not alleged sufficient personal responsibility to survive a motion for summary judgment. Clearly, neither Walker nor Dann directly participated in the alleged violations. Plaintiff seeks to establish personal responsibility by claiming that these defendants failed to remedy the violations after learning of them through a report or appeal.

Plaintiff alleges that he began writing to defendant Walker in May of 1995 about harassment by defendant York. It is true that personal responsibility of a supervisory official may be established if the official learns of the violation through a report or appeal and fails to remedy the situation. *Williams, supra.* However, the letter or complaint must alert the supervisory official to the constitutional violation of which the plaintiff complains. *See* Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995); Watson v. McGinnis, 964 F.Supp. 127, 129–30 (S.D.N.Y.1997).

**\*3** In the instant case, the plaintiff's complaints to defendant Walker about York and Kimak relate to the alleged harassment that the plaintiff was suffering. There is no evidence that the Superintendent or Deputy Superintendent Dann knew anything about the plaintiff's allegation of retaliatory misbehavior reports. Thus, they could not be held liable for any claims of retaliation. The grievances that the plaintiff submitted were all investigated as shown by the defendants' exhibits. One of the grievances dealt with an allegation of "false

keeplock." [FN2] Defendants' Exhibit C. A review of the documents relating to the grievance and all the appeals associated therewith, shows no evidence that defendants Walker or Dann were ever informed of the situation. In fact, the grievance is signed by an individual named Duncan in the space reserved for the Superintendent's signature. Defendants' Exhibit C at p. 6. Attached to the grievance papers are all the memoranda regarding the investigation of the issue.

> FN2. This was the June 6, 1995 grievance mentioned in plaintiff's complaint.

Defendants' Exhibit J contains plaintiff's June 11, 1995 letters [FN3] to defendant Walker. The letters stated that defendants York and Kimak were trying to cause the plaintiff to have a heart attack by their harassment. The harassment included not releasing the plaintiff for "chow" and preventing plaintiff from timely visits to the law library. Plaintiff mentioned a false misbehavior charge, but stated that this allegation was being handled in the Cayuga County Court.

> FN3. There are two letters in Exhibit J. Both are dated June 11, 1995. One is typed and one is handwritten.

One of plaintiff's June 11 letters was given to Deputy Superintendent Dann, who asked Lieutenant Jackson to investigate the issues raised. Defendants' Exhibit K includes documents relative to Lieutenant Jackson's investigation of the matter, including memoranda of interviews of the officers involved. Although the investigation did not achieve the result desired by the plaintiff, this does not constitute the requisite personal involvement by Walker or Dann in any alleged constitutional violations.

In fact, defendant Dann wrote plaintiff a memorandum stating the results of Lieutenant Jackson's investigation. Defendants' Exhibit K. The memorandum stated that although no merit had been found in plaintiff's claims, Sergeant Lupo was told to speak with the plaintiff to make sure his

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

concerns were addressed. *Id.*

**4. Due Process**

The complaint in this action focuses upon defendant York and Kimak's retaliatory misbehavior reports, however, in passing, the plaintiff also states that Lieutenant Battle "closed his eyes to the evidence," did not properly evaluate the plaintiff's testimony, and "covered" for the officers. These claims could be interpreted as raising a procedural due process claim in addition to the substantive retaliation claim.

The court would first point out that there were three allegedly retaliatory misbehavior reports. Lieutenant Battle was the hearing officer only at *one* of the hearings. Lieutenant Perkins was the hearing officer for the other two hearings. Plaintiff does not mention Perkins in the complaint at all. Thus, the undersigned will consider a procedural due process claim on the one hearing over which defendant Battle presided which took place on July 17, 1995. Defendants' Exhibit S. The formal charge was served on plaintiff on July 13, 1995, and charged plaintiff with refusing a direct order and being out of place. *Id.* at p. 3 (transcript of disciplinary hearing). Officer Kimak was the individual signing the misbehavior report. Defendants' Exhibit R.

**\*4** In order for a plaintiff to be awarded damages under section 1983 for an alleged violation of procedural due process, the court must find that as a result of conduct performed under color of state law, plaintiff was deprived of life, liberty, or property without due process. *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). In the instant case, there is no dispute that the defendants acted under color of state law. In *Bedoya,* the Second Circuit indicated that "[w]hat remains is a two-pronged inquiry: (1) whether the plaintiff had a protected liberty interest in not being confined in keeplock ...; and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Id.* at 351–52 (citing *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460–61, 109 S.Ct. 1904,

104 L.Ed.2d 506 (1989)).

In order to determine whether a liberty interest existed, courts, until recently, were relying on the Supreme Court decision in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). In *Hewitt,* the Supreme Court noted that a state could create a liberty interest through a statute or regulation by utilizing language of unmistakably mandatory character, limiting the discretion of the decision maker. *Id.* After the decision in *Hewitt,* lower courts, as well as the Supreme Court, focused more upon the language of the statute or regulation, rather than upon the character of the deprivation. *See e.g., Kentucky Dep't of Corrections, supra; Hernandez v. Coughlin,* 18 F.3d 133 (2d Cir.1994) (finding no liberty interest after examining regulations associated with the Family Reunion Program), *cert denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *Matiyn v. Henderson,* 841 F.2d 31 (2d Cir.1988) (finding liberty interest in remaining free from administrative segregation based on New York regulations); *Gittens v. LeFevre,* 891 F.2d 38, 41 (2d Cir.1989) (finding a liberty interest in remaining free from keeplock based on language of the regulations).

The Supreme Court has held that the *Hewitt* analysis is not applicable and has led to undesired results in prison cases. *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Courts may no longer rely *solely* upon the language of the regulations when determining whether a liberty interest exists. *Id.* at 2300. The Court stated in Sandin that "the search for a negative implication from mandatory language in prison regulations has strayed far from the real concerns under-girding the liberty protected by the Due Process Clause." *Id.* The court also stated that it was *returning* to the principles established in *Wolff* and *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). *Id.* Ultimately, the court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not ex-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

**\*5** *Sandin* rejected the notion that any action taken by prison personnel for punitive reasons encroaches on a liberty interest. *Id.* at 2301. The court referred to as "dicta" statements in other cases implying that solitary confinement automatically triggers due process protections. *Sandin,* 115 S.Ct. at 2301 (citing *Wolff,* 418 U.S. at 571 n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Applying this standard to the facts in *Sandin,* the court determined that Conner's discipline in segregated confinement for 30 days did ***not*** present the type of atypical, significant deprivation in which the state might create a liberty interest. *Id.*

In determining what constituted "atypical and significant" deprivations, the *Sandin* court compared disciplinary segregation with other forms of segregation; compared the plaintiff's confinement with conditions in general population to see whether the inmate had suffered a major disruption in his environment; and examined whether the ***length*** of the inmate's sentence was affected. *Id.*

The Second Circuit has not yet squarely addressed the issue of whether after *Sandin* an inmate facing a disciplinary hearing has a liberty interest, protected by due process. The Second Circuit has *implied* that whether a deprivation is atypical and significant involves fact finding. *See Frasier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996) ("[t]he extensive fact-finding of the district court permits us to measure Frasier's SHY claim by the standard of *Sandin* ); *Samuels v. Mockry,* 77 F.3d 34, 38 (2d Cir.1996) (assessment as to whether inmate had a protected liberty interest may require fact finding).

Some courts in New York have also read *Sandin* narrowly and have distinguished the holding when applying the *Sandin* factors and distinguish-

ing the situation experienced by inmate Conner to that experienced by New York inmates who face Tier III disciplinary hearings. *See Campo v. Keane,* 913 F.Supp. 814, 820–21 (S.D.N.Y.1996); *see Moolenaar v. Finn,* No. 94 Civ. 6778 n. 4 (S.D.N.Y. March 14, 1996) (commenting that the case involved a Tier II hearing with no ***possibility*** of loss of good time and contrasting Tier III hearings where such loss is possible). As noted by the courts in *Campo* and *Moolenaar,* a recognized Second Circuit principle is that due process rights must be determined with respect to the "potential penalty". *Campo,* 913 F.Supp. at 821 (citing *McKinnon v. Patterson,* 568 F.2d 930, 939 (2d Cir.1977), *cert denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978)). Some courts, however, have squarely rejected the potential penalty theory, opting instead to examine the facts and length of each confinement to determine whether the confinement was atypical and significant. *See Marino v.. Klages,* No. 95–CV–1475 (N.D.N.Y. March 27, 1997) (declining to adopt the potential penalty approach); *Delany v. Selsky,* 899 F.Supp. 923, 927–28 (N.D.N.Y.1995) (considering length of confinement together with plaintiff's unusual physical problems).

**\*6** In the instant case, the plaintiff was subjected only to a ***Tier II*** hearing, in which the maximum possible penalty he could receive was 30 days of segregated housing or keeplock. *See* N.Y.Comp.Codes R. & Reg. Tit. 7 § 254.7(a)(iii) and (vi). There is no possibility in a Tier II hearing of a loss or even a recommended loss of good time. Regardless of the disposition, the length of an inmate's sentence cannot be affected as a result of a Tier II hearing. Even under the potential penalty approach, this plaintiff, who was only sentenced to five days of keeplock for the hearing that he is challenging would not have a liberty interest in being free from that confinement. Thus, any procedural due process claim against Lieutenant Battle, based on the July 17, 1995 disciplinary hearing may be dismissed.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
**(Cite as: 1997 WL 642543 (N.D.N.Y.))**

**5. Verbal Harassment**

Plaintiff states that defendants York and Kimak harassed him "to death." Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation. *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997). Thus, any claims of general verbal harassment by either defendant may be dismissed.

**6. Retaliation**

Even after the Sandin decision, a claim that a false misbehavior report was filed in retaliation for the exercise of a constitutional right, is still actionable as a violation of ***substantive due process.*** The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to false misbehavior charges or be harassed in retaliation for the exercise of a constitutional right such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679–80 (2d Cir.1995); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988). In cases where the defendants' actions are taken for both retaliatory and legitimate reasons, ultimately the defendants must show that they would have taken the same action absent the retaliatory motive. *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir .1994). Courts recognize, however, that claims of retaliation may be prone to abuse. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). The court in Flaherty described three situations where retaliation is claimed, each situation requiring a different approach by the court. *Id.* The court stated that a retaliation claim supported by specific and detailed allegations must be pursued with full discovery. *Id.* Whereas, a claim that contains "completely conclusory" allegations may be dismissed on the pleadings alone. *Id.* The third situation involves a complaint alleging facts that give rise to a "colorable suspicion of retaliation." *Id.* This third type of case will support at least documentary discovery. *Id.*

In the instant case, the plaintiff alleges that officers York and Kimak filed the false misbehavior reports in retaliation for plaintiff's complaints and grievances against them. Plaintiff also alleges that defendant York retaliated against plaintiff for the exercise of a First Amendment right to practice his religion. This latter claim is not explained by the plaintiff. He does not allege specifically what First Amendment right he was exercising or how the defendants' actions were in retaliation for the exercise of that right.

**\*7** Defendants have submitted all the records relating to the disciplinary hearings. With respect to the charges, a review of the transcripts of the disciplinary hearings shows that the plaintiff was given the opportunity to explain his behavior at the disciplinary hearing. *See e.g.* Defendants' Exhibit M at p. 4. Exhibit M is the transcript of the disciplinary hearing that took place on June 11, 1995 for a misbehavior that occurred on June 7, 1995. The misbehavior involved the plaintiff failing to obey an order to continue working. The plaintiff admitted that he did not continue working when defendant York told him to continue. *Id.* Plaintiff stated that his medical condition was preventing him from continuing. *Id.* Essentially, the plaintiff admitted his behavior, but alleged a defense that his medical condition prevented him from following the officer's order.

Thus, the misbehavior report was not ***false.*** Rather, the plaintiff had an explanation for his misbehavior that the hearing officer did not believe. In fact, hearing officer Perkins adjourned the hearing to "check into [[[plaintiff's] medical profile." *Id.* at p. 5. The hearing was reconvened on July 12, 1995, and Lieutenant Perkins had reviewed the plaintiff's medical record. *Id .* at p. 6. Perkins determined that although the plaintiff did have a health problem, there was no indication that he could not work. *Id.* Whether the hearing officer made the correct decision is not the issue. It is clear that at worst, there could have been a dual motivation for defendant York's misbehavior report, and plaintiff did admit

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)
**(Cite as: 1997 WL 642543 (N.D.N.Y.))**

failing to obey the officer's order, albeit with reason.

The misbehavior report of July 8, 1995 resulted in a hearing on July 12, 1995. First, the officer fling the misbehavior report was Officer Hoey. The misbehavior report involved unauthorized legal assistance and unauthorized legal exchange. Defendants' Exhibit P (transcript of July 12 hearing). A frisk of the plaintiff's cell resulted in finding 81 pages of legal work that belonged to other inmates. Plaintiff did not dispute that the legal papers were in his cell, but argued that he was using the other individuals' papers to work on his own legal matters. *Id.* at p. 3. The hearing officer simply did not believe the plaintiff's explanation. *Id.* at p. 5.

Neither defendant York nor defendant Kimak was directly involved in the search or the misbehavior report of July 7, 1995. Thus, there is no evidence that this misbehavior report was false and in retaliation for any constitutional right exercised by the plaintiff.

The final misbehavior report was authored by defendant Kimak and involved refusal to obey an order and being out of place. The disciplinary hearing was held on July 17, 1995. Defendants' Exhibit S (transcript of disciplinary hearing). The misbehavior report stated that when plaintiff was returning from his shower, he refused to obey Officer Kimak's order get back into plaintiff's cell. Defendant Kimak stated in the report that plaintiff had stopped at one of the cells and placed his hands inside. *Id.* at p. 3. Plaintiff alleged at the hearing that he was returning from the shower, but he did not stop at anyone's cell and did not disobey any orders. *Id.* at p. 4. Plaintiff also told the hearing officer that defendant Kimak's actions were in retaliation for plaintiff's complaints against Kimak. *Id.* at pp. 4–5. Plaintiff called two inmate witnesses to testify at the hearing. *Id.* at p. 7. His first witness was very unclear, but essentially testified that he did not hear the officer give plaintiff an order. *Id.* The second inmate was more articulate and stated that after plaintiff exited the I shower, he always went straight back to

his cell. *Id.* at p. 12. Moore testified that he did not hear any order given. *Id.* However, Lieutenant Battle found the witnesses incredible and found plaintiff guilty of the misbehavior. It would appear that the only evidence of retaliation is the plaintiff's allegation of complaints against Kimak and York. A review of the documents I relating to the misbehavior reports shows that even if the plaintiff's statements are credited, the misbehavior reports could have been written for valid reasons as well as invalid reasons. Thus, the plaintiff cannot maintain an action for retaliation in the instant case.

### 7. Eighth Amendment

**\*8** Plaintiff makes some vague allegations that the defendants forced him to work when he was not capable. Plaintiff admitted at his disciplinary hearing that he wanted to work but needed to take a break. Lieutenant Perkins looked through the plaintiff's medical records and found no limitations with respect to the work he could do. The medical record did note a heart condition.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments, including punishments that involve the unnecessary and wanton infliction of pain. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994). In order to state a claim based on inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A plaintiff must allege that his access to physicians for necessary medical care was unreasonably delayed or denied or that prescribed medical treatment was not administered. *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230 (S.D.N.Y.1982) (citing *Todaro v. Ward,* 431 F.Supp. 1129, 1133 (S.D.N.Y.), *aff'd,* 565 F.2d 48 (2d Cir.1977)). Plaintiff's claims, although not specifically involving medical care, do involve allegations that the defendants violated the doctor's orders, and are governed by the same deliberate indifference standard. Deliberate indifference, whether evidenced by medical staff or by officials who al-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

legedly disregard the instructions of the medical staff requires more than negligence, but less than conduct taken for the very purpose of causing harm. *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). In order for a prison official to act with deliberate indifference, the official must know of and disregard an excessive risk to inmate health and safety. *Id.* at 1979. The official must both be "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In the instant case, defendant York allegedly told the plaintiff to keep working when plaintiff stated that he needed a break. The defendant could not have been deliberately indifferent since there was no medical limitation on plaintiff's work in his medical file. Thus, York could not have known about and disregarded a serious risk to plaintiff. Additionally, according to the misbehavior report, the plaintiff had already taken a break when defendant York told plaintiff to keep working. Thus, based on the undisputed facts, there is no evidence that defendant York violated the plaintiff's Eighth Amendment rights relating to his medical condition. Plaintiff also indicated in his complaint that defendant York refused to let plaintiff out of his cell to be fed. Plaintiff wrote a grievance on June 29, 1995 regarding being released "for chow." Defendants' Exhibit D. However, it does not appear that Officer York was involved in the incident. In fact, the grievance was resolved informally. Thus, the plaintiff does not state any Eighth Amendment claim for a retaliatory denial of food or for any denial of food.

**\*9 WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that the defendants' motion for summary judgment (docket # 15) be **GRANTED,** and the complaint be **DISMISSED.**

Pursuant to 28 1 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R .Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,1997.
Carpio v. Walker
Not Reported in F.Supp., 1997 WL 642543 (N.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 893070 (S.D.N.Y.)
**(Cite as: 1999 WL 893070 (S.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Andrew A. BROWN, Plaintiff,
v.
John DOE # 1, Correctional Officer, et al., Defendant.

No. 96 CIV. 1222 RMBRLE.
Oct. 18, 1999.

Andrew Brown, Attica Correctional Facility, Attica, for Plaintiff.

K. Lesli Ligorner, Assistant Corporation Counsel, The City of New York Law Department, New York, for Defendant.

### MEMORANDUM OPINION & ORDER
ELLIS, Magistrate J.

#### I. INTRODUCTION

**\*1** On February 21, 1996, Andrew A. Brown ("Brown") filed a complaint under 42 U.S.C. § 1983, alleging that his constitutional rights guaranteed under the Eighth and Fourteenth Amendments had been violated. Currently before this Court is the motion of defendants' New York City Department of Correction ("DOC") and Warden William Fraser ("Fraser") to dismiss Brown's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, defendants' motion is deferred until defendants have provided the requisite discovery information and materials to *pro se* incarcerated plaintiff as mandated by Local Rule 33.2, and defendants are ORDERED to answer the standard interrogatories and document requests required by Local Civil Rule 33.2

#### II. FACTS

The alleged incident occurred while Brown was an inmate at Riker's Island. [FN1] On July 27, 1994, Brown was removed from his cell for a court appearance and placed in a holding pen to be strip-searched. Compl. at ¶ IV. [FN2] Two correction officers ("John Doe # 1" and "John Doe # 2", named defendants) were present. *Id.* Another inmate in the holding pen threatened Brown, in the presence of John Doe # 1 and John Doe # 2. *Id.* The other inmate was strip-searched and placed in another pen. *Id.* After Brown was strip-searched, he was placed by John Doe # 1 and John Doe # 2 in the same pen with the inmate who had threatened him. *Id.* Brown was attacked by the other inmate, who slashed him with a razor blade in the back of the neck. *Id.* Subsequent to the attack, Brown was denied adequate medical care. Compl. at IV–A.

> FN1. The recitation of the facts is taken from the Complaint herein. For the purposes of this instant motion, they are assumed as true.

> FN2. "Compl." refers to Plaintiff Brown's complaint under 42 U.S.C. § 1983, filed February 21, 1996.

#### III. DISCUSSION

The incident at issue allegedly occurred on July 27, 1994. Plaintiff Brown filed his complaint on February 21, 1996. This Court issued an Order dated June 25, 1996, designated the case as a Local Rule 48 case, and ordered plaintiff to serve interrogatories on defendant DOC asking for the identities and badge number of the "John Doe" correction officers. On April 14, 1997, the defendants filed a waiver of reply under 42 U.S.C. § 1997(e)(7)(g)(2). In a letter to this Court, defendants indicated that since they never received an order directing them to respond to the complaint in this action, they had not responded. *See* Def. Let. at 1, ¶ 3. [FN3] The Court granted defendant's request to extend the time to respond to the complaint to May 7, 1999. *Id.* at 2. Defendants, however, did not file an answer to the complaint. Instead, they filed the present motion to dismiss.

> FN3. "Def. Let." refers to Corporation

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 893070 (S.D.N.Y.)
**(Cite as: 1999 WL 893070 (S.D.N.Y.))**

Counsel's letter to this chambers, dated April 6, 1999.

While this Court recognizes that prisoner litigation cases were, for a short period, in a state of flux after the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e), was enacted, the defendants have effectively failed to respond to this complaint for four years. First, defendants ignored both plaintiff's discovery requests and this Court's designation of this case as a Rule 48 case by not answering the Standard Interrogatories mandated by Local Rule 48, now Local Rule 33.2. *See* Local Rules of the United States District Courts for the Southern and Eastern District of New York, Rule 33.2 "Standard Discovery in Prisoner Pro Se Actions" (Apr. 15, 1997). Instead, defendants chose to file a waiver of reply.[FN4] Then, defendants responded to this Court's Order extending time for an answer by filing a motion for dismissal. The result of the defendants' passive approach is that we still do not know the identities of the correction officers at the heart of this complaint. Granting the defendants' motion would effectively eviscerate the intent of the local rule.

> FN4. Defendants maintain that they never received an order directing them to answer until this Court's Order of April 8, 1999. The defendants, however, ignored several indicia that the case had passed the Court's screening process. The docket report indicates, for example, that plaintiff had been granted in forma pauperis status, that the case had been referred to a magistrate judge for general pretrial supervision, that an amended complaint had been filed, and that plaintiff had been allowed to file interrogatories.

**\*2** Plaintiffs, especially *pro se* incarcerated plaintiffs, should be given an opportunity to identify the unknown defendants through discovery. Indeed, our local civil rules have provided for such a case as this: when a *pro se* incarcerated litigant needs assistance in identifying alleged perpetrators,

it is the affirmative duty of the named defendants, who are in the unique position of knowing that information, to answer the standard discovery requests aimed at identifying the unknown persons. Local Rule 33.2 provides that: "such defendants *shall* ... respond to the standing discovery requests adopted by the court." *Id.* (emphasis added).

In *Valentin v. Dinkins,* 121 F.3d 72, 75 (2d Cir.1997), the court recognized that " '[f]rom [a prisoner's] place of incarceration, it is hard to see what investigative tools would be at his disposal to obtain further information on [a perpetrators] identity." The panel held that district courts must assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants. *See Id.* at 76. In coming to this conclusion, the panel relied favorably on a Seventh Circuit case, *Billman v. Indiana Dep't of Corr.,* 56 F.3d 785 (7th Cir.1995). The court in *Billman* stated:

> We do not think that the children's game of pin the tail on the donkey is a proper model for constitutional tort law. If a prisoner makes allegations that if true indicate a significant likelihood that someone employed by the prison system has inflicted cruel and unusual punishment on him, and if the circumstances are such as to make it infeasible for the prisoner to identify that someone before filing his complaint, his suit should not be dismissed as frivolous.

*Id.* at 789. Also, "we do not think it an adequate discharge of judicial duties to turn away a prisoner because confinement has prevented him from preparing what may be a meritorious complaint." *Id.* at 790.

### IV. CONCLUSION

Based on these principles, defendants' motion is deferred until defendants have provided the requisite discovery information and materials to *pro se* incarcerated plaintiff as mandated by Local Rule 33.2, and defendants are ORDERED to answer the standard interrogatories and document requests required by Local Civil Rule 33.2

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1999 WL 893070 (S.D.N.Y.)
**(Cite as: 1999 WL 893070 (S.D.N.Y.))**

S.D.N.Y.,1999.
Brown v. Doe
Not Reported in F.Supp.2d, 1999 WL 893070
(S.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
**(Cite as: 2000 WL 949457 (N.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Shawn MONCRIEFFE, Plaintiff,
v.
Linda WITBECK, Corrections Officer at Coxsackie
Correctional Facility; B. Schwebler; Dominic Man-
tello, Superintendent; C.O. Weeks; C.O. Jensen;
and C.O. McFarlene, Defendants.

No. 97–CV–253.
June 29, 2000.

Shawn Moncrieffe, Auburn Correctional Facility,
Auburn, New York, Plaintiff, pro se.

Hon. Dennis C. Vacco, Attorney General for the
State of New York, Steven H. Schwartz, Assistant
Attorney General, Department of Law, the Capitol,
Albany, New York, for Defendants.

MEMORANDUM–DECISION AND ORDER
MORDUE, J.

*INTRODUCTION*

**\*1** Plaintiff moves and defendants cross-move
for summary judgment under Section 56(b) of the
Federal Rules of Civil Procedure in this *pro se* ac-
tion pursuant to 42 U.S.C. § 1983 alleging viola-
tions of his rights under the Fourth, Eighth and
Fourteenth Amendments to the United States Con-
stitution.

Presently before the Court is the Re-
port–Recommendation of the Hon. Magistrate
Judge David R. Homer dated December 23, 1998,
recommending that plaintiff's motion be denied and
defendants' cross-motion be granted in part and
denied in part.

Plaintiff filed timely objections to the Re-
port–Recommendation.

*FACTS*

In his complaint, plaintiff alleges that between
August and November, 1996, while he was housed
in the Special Housing Unit of Coxsackie Correc-
tional Facility, defendant Correctional Officer
Linda Witbeck deprived him of a food tray six
times; that Witbeck deprived him of things such as
recreation and supplies six times; that Witbeck
laughed at him four times while he was in the
shower; that Witbeck sexually harassed plaintiff
once "when she felt [plaintiff's] genitals and rear
end during a regular recreation pat frisk;" that Wit-
beck ransacked his cell; and that in some unspe-
cified manner Witbeck gave him a death threat.
Plaintiff further alleges that during the same period
defendant Correctional Officer Weeks sexually har-
assed him during a routine pat frisk when Weeks
"felt [plaintiff's] genitals a few times." Plaintiff
claims that on two occasions defendant Correction-
al Officer McFarlene entered his cell and ransacked
it while plaintiff was in the shower and once confis-
cated "a few of [plaintiff's] things." Plaintiff also
claims that defendant Correctional Officer Jensen
threatened him once and assaulted him once by
kicking him in the back. Plaintiff states that the
grievance supervisor, defendant Schwebler, did not
log and number plaintiff's grievances as required
and that Superintendent Dominic J. Mantello dis-
regarded plaintiff's numerous complaints.

Magistrate Judge Homer recommended denial
of plaintiff's motion for summary judgment and dis-
missal of all of plaintiff's claims except his Eighth
Amendment claim against Witbeck for denial of
food.

*DISCUSSION*

Pursuant to 28 USC § 636(b)(1)(C), this Court
must make a de novo determination of those por-
tions of the Magistrate Judge's Re-
port–Recommendation to which plaintiff has spe-
cifically objected. Here, plaintiff objects to Magis-
trate Judge Homer's recommendations except with
respect to the issues of verbal harassment, threats
and denial of recreation. He erroneously states that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
**(Cite as: 2000 WL 949457 (N.D.N.Y.))**

the Report–Recommendation does not address the claim that Witbeck laughed at him while he was in the shower; however, this allegation amounts to a claim of verbal harassment, which is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Accordingly, the Court will address all other issues de novo.

Summary Judgment is appropriate when the pleadings, affidavits, and any other supporting papers demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Facts, inferences therefrom and ambiguities must be examined in a context which is most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**\*2** The movant bears the initial burden of showing that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita* at 586. The moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e); *Liberty Lobby* at 250.

Where summary judgment is sought against a *pro se* litigant the Court must afford him special solicitude. *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988).

A. *Defendant Mantello*

Plaintiff alleges that defendant Mantello is liable because, as Superintendent of the Coxsackie Correctional Facility, he "disregarded" numerous complaints made to him by plaintiff. More specifically, plaintiff alleges that (1) Mantello failed to remedy a wrong after having learned of it and (2) that Mantello was negligent in his supervision of subordinate employees.

Magistrate Judge Homer concluded in his Report–Recommendation that plaintiff failed to demonstrate a claim against Mantello. With respect to plaintiff's first allegation that Mantello failed to remedy a wrong, the Magistrate Judge determined that either Mantello or his subordinates investigated plaintiff's grievances. Because plaintiff's complaints were investigated and it was concluded that the grievances were without merit, Mantello satisfied his obligations with respect to plaintiff's grievances.

The Magistrate Judge similarly rejected plaintiff's second claim that Mantello negligently supervised subordinate employees who were allegedly violating his constitutional rights. Magistrate Judge Homer concluded that no claim was stated because, whereas the law requires gross negligence to impose supervisor liability, plaintiff merely alleged negligence. In addition to determining that plaintiff's claim was without merit for failure to plead and prove gross negligence, Magistrate Judge Homer also concluded that plaintiff had failed to establish even ordinary negligence on the part of Mantello.

Plaintiff objects to Magistrate Judge Homer's conclusion that he failed to establish supervisor liability. Plaintiff argues that the record establishes gross negligence in that Mantello was aware that plaintiff's rights were being violated but chose to ignore them by failing to investigate or remedy same.

In order to establish a successful § 1983 claim, a plaintiff must establish that a defendant was personally involved in the alleged rights violation. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). An official is not liable in a section 1983 action under the doctrine of respondeat superior. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981). However, an individual who occupies a supervisory position may be found personally involved by: (1) direct participation; (2) failing to remedy a wrong after learning of the violation through a report or appeal; (3) creating a policy or custom under which

unconstitutional practices occurred or allowing the policy or custom to continue; or (4) gross negligence in managing subordinates whose conduct caused the unlawful condition or event. *See Wright, 21 F .3d at 501.*

**\*3** With respect to plaintiff's objection arguing that Mantello was grossly negligent, plaintiff simply reiterates his original arguments and relies on evidence already in the record and considered by the Magistrate Judge. Plaintiff merely reiterates in his objections to the Report–Recommendation that he has established a case

> which includes gross negligence as evidence [sic] in plaintiff's motion. (See plt. motion for summary judgment, memo. Of law pg. 23 with annexed exibits [sic] and plt. Reply decl. Pg. 11 with attached exibits [sic] ). Moreover, the record is legally sufficient to establish and impose supervisory liability. (See exibits [sic] attached to plt. motion for summary judgment and Reply motion).

As Magistrate Judge Homer correctly stated, the record clearly reveals that Mantello or his subordinate employees investigated plaintiff's grievances and rejected them as being without merit. As such, there is nothing in the record indicating that Mantello either turned a blind eye to plaintiff's complaints. Simply stated, plaintiff's assertion that Mantello ignored his complaints is refuted by the investigations conducted regarding the complaints. Similarly, plaintiff's allegation that Mantello failed to remedy a wrong is without merit because the record reflects that the investigation of the complaints came to the conclusion that no wrongs were being committed.

Aside from reiterating his initial arguments, plaintiff has failed to provide the Court with anything further in his objection which would warrant disturbing the sound conclusion of the Magistrate Judge. Accordingly, this Court accepts Magistrate Judge Homer's determination to dismiss plaintiff's claim with respect to defendant Mantello.

### B. *Verbal Threats and Harassment*

Plaintiff alleges that he was subjected to verbal threats and harassment in that corrections officers laughed and insulted him while he showered. Plaintiff also maintains that he was subjected to threats of violence. Magistrate Judge Homer recomended that defendants were entitled to summary judgment because plaintiff failed to establish an actual injury resulting from the alleged threats or harassment.

A claim for verbal harassment is not actionable under 42 U.S.C. § 1983. *Aziz Zarif Shabazz v. Picco,* 994 F.Supp. 460, 474 (S.D.N.Y.1998); *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995). As correctly noted by the Magistrate Judge, "verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Picco* 994 F.Supp. at 474. Similarly, "threats do not amount to violations of constitutional rights." *Malsh,* 901 F.Supp. at 763.

Even assuming that the alleged verbal harassment and threats occurred, plaintiff has failed to plead or prove that there were any accompanying actual injuries. Furthermore, plaintiff does not object to the findings of the Magistrate Judge with respect to verbal threats and harassment. After a thorough review of the Report–Recommendation the Court adopts the recommendation of the Magistrate Judge.

### C. *Excessive Force*

**\*4** Plaintiff alleges that defendant Jensen kicked him once in the back on November 9, 1996. He states that he suffered pain but does not claim that he sought medical assistance. Plaintiff does not allege that Jensen acted maliciously or sadistically.

Magistrate Judge Homer found that plaintiff had failed to annunciate an actionable claim for excessive force. More particularly, he concluded that the alleged kick, even if true, was of limited dura-

tion and that there was no malicious intent on the part of the corrections officer.

It is well settled that "the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312 (1986) )(internal quotation marks omitted). In reviewing a prisoner's claim a Court must consider whether the prison official acted with a sufficiently culpable state of mind and whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Hudson* at 8. In considering whether the prison official possessed a culpable state of mind while engaging in the use of force, the inquiry is whether the prison official applied force maliciously and sadistically to cause harm. *Id.* at 7. The extent of an inmate's injuries is relevant to this inquiry, as is the nature and duration of the act. *James v. Coughlin,* 13 F.Supp.2d 403, 409 (W.D.N.Y.1998); *Reyes v. Koehler,* 815 F.Supp. 109, 113–14 (S.D.N.Y.1993). Important in considering the alleged wrongdoing is determining whether the force was applied in a good faith effort to maintain or restore prison discipline or maliciously and sadistically to cause harm. *Hudson* at 7.

With respect to the nature of the wrongdoing, a prisoner must demonstrate that the deprivation alleged is sufficiently serious or harmful enough to reach constitutional dimensions. *Romano v. Howarth,* 998 F.2d 101, 104–05 (2d Cir.1993). A prisoner is not required to demonstrate that he sustained a serious injury; *de minimis* use of force does not, however, give rise to an Eighth Amendment claim. *Hudson* at 9–10.

Plaintiff's allegations, even if true, do not support a determination that Jensen acted maliciously or sadistically. Interestingly, in his objections to the Report–Recommendation, plaintiff admits that the kick was of limited duration. In the balance of his objection plaintiff merely reiterates his opinion that the evidence submitted supports an inference of malice. The Court concludes that the conduct al-

leged is not sufficiently serious or harmful to reach constitutional dimensions. Accordingly, defendants are entitled to summary judgment dismissing plaintiff's excessive force claim.

D. *Access to the Courts*

Plaintiff alleges that he was denied access to the courts as a result of cell searches, confiscation of documents and denial of supplies between August and November 1996. Plaintiff alleges that these actions were motivated to frustrate his efforts to litigate.

**\*5** Magistrate Judge Homer recommended that the defendant's motion to dismiss this claim should be granted. The Magistrate Judge found that plaintiff's claim of denial of access to the courts was unsubstantiated with any evidence which demonstrated that plaintiff had suffered any actual injuries from any alleged wrongful conduct. To the contrary, Magistrate Judge Homer concluded that plaintiff's claims were supported by a thirty-five page memorandum of law containing both case and statutory authority as well as an exhibit related to state court proceedings—all of which demonstrated plaintiff's full and adequate ability to litigate his claims.

It is well established that prisoners have a constitutional right to access to the courts. "To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts demonstrating that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995); *see Morello v.. James,* 810 F.2d 344, 347 (2d Cir.1987). In other words, in order to establish a violation of his right of access to the courts, an inmate must demonstrate that he has suffered or imminently will suffer actual harm in presenting a claim to the court. *Lewis v. Casey,* 518 U.S. 343 (1996).

In his objections to the Report–Recommendation, plaintiff restates arguments

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
**(Cite as: 2000 WL 949457 (N.D.N.Y.))**

already considered by Magistrate Judge Homer. He states that "[p]laintiff further reiterates that he has incurred irreparable harm and injury as a result of the lack of legal services he received while confined in Coxsackie SHU." Plaintiff goes on to note that his complaints would not have been able to have been brought had he not been transferred to the Elmira Correctional Facility. Implicit in this statement is that plaintiff was in fact allowed to bring his claims. Assuming *arguendo* that plaintiff was not allowed to bring his claims until after transfer, the fact still remains that plaintiff did in fact have the ability to air his grievances. Therefore, at best, plaintiff's hardship was delay in bringing his claims. As plaintiff has not established how such an alleged delay has prejudiced his rights or amounted to an injury, he fails to make the requisite showing of actual injury for a successful claim. As such, the Court accepts Magistrate Judge Homer's recommendation and grants defendant's motion as to this claim.

E. *Sexual Harassment*

With respect to plaintiff's sexual harassment claim, Magistrate Judge Homer concluded that plaintiff failed to establish an actionable case. Magistrate Judge Homer found that the conduct involved was *de minimus* and, therefore, did not violate a constitutionally protected right.

Sexual abuse of an inmate by a corrections officer may reach constitutional dimensions and give rise to an Eighth Amendment claim. *Boddie v. Schnieder,* 105 F.3d 857, 859 (2d Cir.1997). When reviewing an Eighth Amendment claim stemming from an allegation of sexual abuse, a Court must consider whether the conduct alleged is sufficiently serious to violate contemporary standards of decency and cause severe physical and psychological harm. *Id* at 861. The Court must further consider whether the prison official involved possessed a sufficiently culpable state of mind. Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may be sufficient evidence of a

culpable state of mind. *Id.* at 861.

**\*6** As set forth above, plaintiff claims that defendants Weeks and Witbeck, each on one occasion, conducted pat frisks in an improper manner. Assuming the truth of these allegations for the purposes of these motions, they are not sufficiently serious to violate contemporary standards of decency and cause severe physical and psychological harm. Plaintiff has failed to demonstrate any severe physical or psychological harm that he has suffered as a result of the alleged harassment. Thus, plaintiff's allegations of sexual abuse fail to state a claim cognizable under the Eighth Amendment. Defendants are therefore entitled to summary judgment dismissing this claim.

F. *Cell Searches*

Plaintiff alleges that he was subjected to cell searches which were designed to harass. Plaintiff's initial pleadings merely allege same with no evidence to support the claim. As a result, Magistrate Judge Homer concluded that plaintiff's claim was without merit and recommended that defendant's motion be granted.

"[T]he Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), even where the search is retaliatory in nature. *Higgins v. Coombe,* 1997 WL 328623, at \*7 (S.D.N.Y.1997). Prisoners do, however, enjoy Eighth Amendment protection from searches that lack any legitimate penological interest and are intended solely to harass. *Nilsson v. Coughlin,* 1987 WL 129823, at \*4 (S.D.N.Y.1987), see also *Hudson* at 530.

Plaintiff fails to raise anything in his objections to the Magistrate Judge's Report–Recommendation which would warrant disturbing the sound conclusion and recommendation found therein. As Magistrate Judge Homer correctly stated the law with respect to plaintiff's claim, and since plaintiff fails to provide any evidence to support his argument that the alleged searches were improper, the Court con-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
**(Cite as: 2000 WL 949457 (N.D.N.Y.))**

cludes that this claim is without merit and grants defendant's motion.

### G. *Deprivation of Food and Recreation*

Prison officials have a duty under the Eighth Amendment to provide humane conditions of confinement: adequate food, clothing, shelter and medical care. Denial of a minimal civilized measure of life's necessities violates the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825 (1994). Depriving an inmate of food or serving him contaminated food may constitute a violation of the Eighth Amendment. *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983); *Odom v. Sielaff,* 1995 WL 625786, at *5 (E.D.N.Y.1995); *see also Rhodes v. Chapman,* 452 U.S. 337, 348 (1981).

Plaintiff alleges that corrections officer Witbeck denied him food on six occasions and on at least two occasions contaminated his food with spit or perfume. In support of their motion to dismiss, defendants rely on an affidavit from Witbeck denying the allegations. Defendants also rely on copies of logbook entries for the SHU in which plaintiff was housed. Because these logbooks do not contain clear entries for some of the dates in issue and would not likely reflect the wrongful denial of meals to an inmate by a corrections officer, they do not establish as a matter of law that defendants never denied plaintiff food. Credibility assessments and choices between conflicting versions of events are matters for a fact-finder at trial, not for the Court on a summary judgment motion. *Fischl v.. Armitage,* 128 F.3d 50, 55 (2d Cir.1997). Thus, plaintiff's motion and defendants' cross-motion for summary judgment are denied with respect to the issue of whether plaintiff's Eighth Amendment rights were violated by deprivation of food.

***7** Plaintiff further alleges that he was deprived of his Eighth Amendment rights where he was allegedly denied recreation on a single occasion. Magistrate Judge Homer concluded that denial of recreation on a single occasion was not sufficiently serious to support a constitutional claim. Plaintiff does not object to these recommendations.

Although prisoner's have a constitutional right to exercise, a claim alleging deprivation of this right requires a showing of a serious deprivation and deliberate indifference on the part of prison officials. *Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir.1996); *Barnham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996). As illustrated by the Report–Recommendation, denial of recreation for eighteen out of nineteen days has been upheld in the Second Circuit and denials of up to seventy-five days have been upheld elsewhere. *Arce v. Walker,* 907 F.Supp. 658 (W.D.N.Y.1995), *aff'd in part, vacated in part* 139 F.3d 329 (2d Cir.1998); *Green v. Ferrell,* 801 F.2d 765 (5th Cir.1986).

Based on the foregoing, the Court concludes that the alleged denial of recreation on a single occasion does not support a claim for deprivation of constitutional rights. Accordingly, defendant's motion is granted with respect to this element of plaintiff's claim.

### CONCLUSION

After a careful review of the file, party submissions and applicable law, it is hereby

ORDERED that Magistrate Judge Homer's Report–Recommendation dated December 23, 1998 is ACCEPTED IN FULL; and it is further

ORDERED that plaintiff's motion for summary judgment is DENIED in all respects; and it is further

ORDERED that defendant's cross-motion for summary judgment be DENIED with respect to plaintiff's claim against defendant Witbeck regarding the alleged deprivation of food and GRANTED in all other respects.

IT IS SO ORDERED

N.D.N.Y.,2000.
Moncrieffe v. Witbeck
Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 949457 (N.D.N.Y.)
**(Cite as: 2000 WL 949457 (N.D.N.Y.))**

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 357358 (W.D.N.Y.)
**(Cite as: 2005 WL 357358 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Francisco PERALTA, 96-A-6821, Plaintiff,
v.
JOHN DOE, Medical Physician at Wende Correctional Facility, RMU Unit, Defendant.

No. 04-CV-6559P.
Jan. 24, 2005.

Francisco Peralta, Staten Island, NY, pro se.

DECISION and ORDER
INTRODUCTION

SKRETNY, J.

**\*1** Plaintiff Francisco Peralta, an inmate of the Arthurkill Correctional Facility, has filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and has both requested permission to proceed *in forma pauperis* and filed a signed Authorization (Docket No. 2). Plaintiff claims that the "John Doe" defendant, the Wende Correctional Facility Medical Physician in the RMU Unit, violated his constitutional rights by improperly administering a dangerous drug without properly monitoring plaintiff's response. For the reasons discussed below, plaintiff's request to proceed as a poor person is granted, but unless plaintiff files an amended complaint as directed below, the complaint will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that while he was held at Wende Correctional Facility, the John Doe medical physician deliberately denied him adequate medical care in violation of the Eighth Amendment. Plaintiff states that he is a dialysis patient. The Wende physician allegedly administered Kayexalate without properly monitoring plaintiff's response. Plaintiff subsequently suffered myalgia so severe

that he was unable to lift his legs. Plaintiff notified the Wende physician that something was wrong, but he was not examined. A few days later, Plaintiff was transported to a hospital for treatment. He claims that he suffered injuries to his right hand, feet and heart as a result of the John Doe physician's failures to monitor plaintiff's response to medication and to respond promptly to his complaints.

DISCUSSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to this action, plaintiff is granted permission to proceed *in forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. In evaluating the complaint, the Court must accept as true all factual allegations and must draw all inferences in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its evaluation of the complaint, the Court finds that plaintiff's claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) unless plaintiff files an amended complaint as directed below.

**\*2** Because plaintiff has not identified a de-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

fendant for service of the complaint, the complaint is subject to dismissal. Ordinarily, where *pro se* litigants have John Doe or unknown defendants, together with named defendants, the complaints are served on those named defendants and the plaintiff pursues discover / regarding the John Doe defendants. "Plaintiffs, especially *pro se* incarcerated plaintiffs should be given an opportunity to identify ... unknown defendants through discovery.' *Brown v. Doe,* 1999 WL 893070, *2 (S.D.N.Y. October 18, 1999)* (deferring defendants' motions to dismiss until they have provided the requisite discovery information and materials to the *pro se* prisoner litigant) (citing *Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir.1997) (district courts must assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants) and *Billman v. Indiana Department of Corrections,* 56 F.3d 785, 789 (7th Cir.1995) (where circumstances "make it infeasible for the prisoner to identify someone before filing his complaint, his suit should not be dismissed as frivolous")). Here, however, plaintiff has not identified any named defendant who can be served or through whom discovery can be pursued. Therefore, the complaint cannot go forward as drafted.

The Court will permit plaintiff to amend his complaint to name a defendant for service and discovery. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). The Court notes that plaintiff pursued a grievance through the Central Office Review Committee regarding his medical treatment at Wende (Docket No. 1, Ex. A) and may have the identity of the John Doe defendant available to him. However, in light of plaintiff's current incarceration in another facility and the attendant difficulty that may pose to obtaining the name on his own, the Court will permit plaintiff to add the Superintendent of Wende Correctional Facility as a named defendant in order to have issue joined and make possible discovery of the John Doe defendant's identity. *Valentin,* 121 F.3d at 76 (district court "may pursue any course that it deems appropriate to a further inquiry into

the identity" of the unknown defendant); *and see Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery."); *Gillespie v. Civiletti,* 629 F.3d 637, 642 (9th Cir.1980) ("the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identifies, or that the complaint would be dismissed on other grounds").

Further, because the Court finds that the defendant is likely to be represented by the New York State Attorney General, the Court will direct the Clerk of the Court to send a copy of the complaint and this order to the Attorney General's Office to facilitate the identification of the John Doe medical physician at Wende Correctional Facility, RMU Unit.

CONCLUSION

**\*3** Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's complaint must be dismissed unless he files an amended complaint by February 25, 2005 in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

answer.

ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff is granted leave to file an amended complaint as directed above by February 25, 2005;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that the Clerk of the Court is directed to send a copy of the complaint and this order to the Assistant Attorney General in Charge, 144 Exchange Street, Rochester, New York 14614;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by February 25, 2005, the complaint shall be dismissed without further order of the Court;

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by February 25, 2005, the Clerk of the Court shall close this case as dismissed without further order; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by February 25, 2005, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

W.D.N.Y.,2005.
Peralta v. John Doe
Not Reported in F.Supp.2d, 2005 WL 357358 (W.D.N.Y.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.